DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ROSS WEINGARTEN (NYBN 5236401)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6747
    Fax: (415) 436-7234
    Ross.Weingarten@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 3-20-70928-MAG |
| Plaintiff, | MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO DETAIN |
| v. | |
| BRIAN RABBITT, | Date: August 20, 2020 |
| Defendant. | Time: 10:30 a.m. |
| | Hon. Susan van Keulen |

The defendant is a 43-year-old resident of San Francisco who sold fentanyl multiple times to a confidential informant. As set forth below, the defendant clearly knew how dangerous fentanyl is, as he told a prospective buyer of fentanyl who received a sample of a half-gram not to take it all due to how dangerous it is. Additional evidence recovered during the execution of search warrants on August 12, 2020 indicates that the defendant and his wife, Dina Gartsman,[1] were engaged in a wide-ranging fraud and identity theft scheme. This latest charge represents just the most recent incident in a long history of criminal behavior by the defendant, almost all of it related to the distribution of narcotics, theft and fraud. For the reasons set forth below, the defendant poses a danger to the community and a risk of

---

[1] Dina Gartsman was charged separately with related offenses, *see* CR 3-20-70929 MAG.

1

flight that cannot be mitigated by conditions of release, and as such, the government seeks his detention.[2]

## I. BACKGROUND

### A. The Charged Offense

On July 10, 2020, the government filed a sealed criminal complaint charging the defendant with one count of distribution and possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Dkt. No. 1. The affidavit of Drug Enforcement Administration (DEA) Special Agent (SA) Connor Hooper submitted in support of the complaint details much of the government's evidence against the defendant. *Id.* In summary, the defendant sold approximately one ounce of fentanyl to a confidential informant on or about August 16, 2019, for $2,200 in U.S. currency. *See Id.* During the course of the government's investigation, the defendant sold an ounce fentanyl twice to a confidential informant in late 2019, and each transaction was audio and video recorded. The government believes that when the defendant was taken into state custody in November 2019, his wife, Ms. Gartsman, took over their fentanyl distribution operation and made at least three more sales of an ounce of fentanyl to a confidential informant. Furthermore, the defendant and his wife discussed their narcotics distribution operation on recorded jail calls that the government has listened to. The government also has evidence that the defendant and others were attempting to open and operate their own fentanyl manufacturing lab. Finally, the evidence in this case shows that the defendant and his wife knew that fentanyl is a dangerous and often deadly substance, and he and his wife told a prospective customer who was obtaining a sample of a half-gram of fentanyl not to do it all at once because "you'll die." Despite knowing that fentanyl could cause a user to overdose and die, the defendant continued to sell it in large quantities.

### B. August 12, 2020 - Execution of Arrest and Search Warrants

On August 11, 2020, the Honorable Alex G. Tse authorized a search warrant for the home of the defendant and his wife after law enforcement located them living in an apartment in the Park Merced

---

[2] The government submits this memorandum without the benefit of the bail study to be completed by the Pretrial Services Office. The government will address any additional issues raised in the bail study during the detention hearing set for Thursday, August 20, 2020 at 10:30 a.m.

neighborhood of San Francisco. A team of DEA agents and local law enforcement officers arrested the defendant on August 12, 2020 and then executed the warrant on the defendant's home and vehicle. Inside the home, agents found numerous access cards and identifications belonging to numerous individuals, pieces of mail addressed to other people, as well as lists of social security numbers, birthdays, and other personal information belonging to people other than the defendant and Ms. Gartsman. Based on this evidence, the government believes that the defendant was engaged in fraud and identity theft targeting innocent victims. This is corroborated by the fact that on July 21, 2020, law enforcement conducted surveillance of the defendant and Ms. Gartsman, and saw them exit their apartment, remove the license plate from their car to evade law enforcement detection, and then enter into a Home Depot store and make almost $1,000 in purchases using fake identities and stolen or fake credit cards.

### C. The Defendant's Criminal History Shows a Pattern of Narcotics Distribution, Fraud, and Identity Theft

That law enforcement found evidence that the defendant was engaged in fraud and identity theft is not surprising, as the defendant has an extraordinarily lengthy criminal history comprised largely of similar crimes.[3] In fact, it appears that for the last 13 years, the defendant has done nothing but commit crimes or be in custody, and even while in custody he has committed crimes. In 2007, the defendant was convicted of theft, burglary, and writing bad checks and sentenced to one year in jail and three years' probation. In 2011, the defendant was convicted of using another person's credit card and sentenced to nine months in custody. In 2012, the defendant was convicted of using an ID with intent to defraud and possession of narcotics, and sentenced to one year in jail and three years' probation. In 2013, the defendant was convicted of possession of narcotics for sale and sentenced to 480 days in jail. In 2014, the defendant was convicted of burglary and use of an ID with intent to defraud, and sentenced to time in custody. In 2016, the defendant was convicted of burglary and sentenced to 360 days in jail. Also in 2016, while on court supervision, the defendant was convicted of using and ID with intent to defraud, and sentenced to another year in prison. In 2018, the defendant was convicted of numerous

---

[3] The government has not yet seen the final Bail Report, and defers to the findings of Pretrial Services with respect to the defendant's criminal history.

crimes related to forging access cards and possessing fake identifications, and sentenced to 730 days in jail. Then, while in custody in 2018, the defendant was convicted of possessing drugs in prison, and sentenced to 816 days of custody. The fact that the defendant possessed narcotics in prison—after numerous prior convictions and sentences—shows blatant disrespect for the criminal justice system and proves definitively that this defendant is not amenable to supervision. In November 2019, the defendant was in state custody for five months after he used a stolen credit card to pay for a hotel room, and then provided a fake name to the hotel. In his car at the time of arrest were several ID cards, credit cards, blank check making materials, and multiple cell phones, along with small amounts of methamphetamine and cocaine. The defendant committed many of these crimes while on probation or court supervision, and also has numerous arrests for similar behavior that did not result in convictions.

In sum, for the last decade and a half, the defendant has done nothing but commit crimes and victimize innocent people. His multiple prior felony convictions did not dissuade him from committing his most recent crimes. The defendant has proven that he cannot abide by the law or conditions of supervision while out of custody, and he should be detained pending trial in this case.

## II.   APPLICABLE LEGAL STANDARD

Pursuant to the Bail Reform Act, codified at 18 U.S.C. § 3142, if the Court finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court shall order the detention of the person before trial. 18 U.S.C. § 3142(e)(1). In making such a determination, the Court shall take into account the available information concerning:

(1) the nature and circumstances of the offense charged, including whether the offense involves a firearm;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

  (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or, local law; and

 (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

"The facts that the Court uses to support a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). The burden of proof rests with the government prior to trial. *See United States v. Hir*, 517 F.3d 1081, 1096 (9th Cir. 2008). Upon a motion for detention before trial, the government bears the burden of demonstrating by a preponderance of the evidence that no set of release conditions will mitigate the risk of non-appearance. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C. § 3142(f)(2)(B).

## III. ARGUMENT

### A. The Defendant Poses a Danger to the Community and a Risk of Flight that Cannot Be Mitigated by Conditions of Release

The defendant's behavior in this case was extraordinarily dangerous. He sold dangerous narcotics that he knew to be deadly. The defendant bragged to customers about the strength and purity of the fentanyl he sold, and told the customer that he and his wife were trying to set up their own fentanyl lab to produce high-quality fentanyl. Moreover, the defendant is engaged in a fraud and identity theft scheme. Evidence found in the defendant's home during the execution of the search warrant—including numerous identifications, passports, social security numbers, and credit and debit cards—strongly suggests that the defendant was engaged in a wide-ranging identity theft and fraud scheme that targeted innocent victims. Law enforcement conducting surveillance on the defendant in July 2020 witnessed him remove the license plate of his BMV SUV, and then enter a Home Depot store and make almost $1,000 in purchases with stolen or fake credit cards and fake IDs. Identity theft and fraud are not victimless crimes; the defendant's crimes, which his criminal history shows he has been

committing for years, hurt innocent members of our community.  The distribution of deadly fentanyl also presents a risk to the community, as it is extremely toxic and even a tiny amount can cause severe injury or death (which evidence in this case shows the defendant knew at the time he sold it).  Finally, the defendant's criminal history shows that no conditions or supervision will prevent him from committing crimes and victimizing people.  The defendant's criminal conduct put this community in grave danger, and if released, there is a virtual certainty that he will attempt to reengage in similar behavior.

The defendant also poses a risk of flight.  In the defendant's apartment, law enforcement agents found numerous IDs belonging to other people, or that have the defendant's picture and other peoples' name on them, along with numerous credit and debit cards in the defendant's name and in the names of victims.  This suggests that the defendant has assumed other peoples' identities in order to commit crimes and evade law enforcement detection.  There is a risk that the defendant would attempt to flee and use or create a fake identification to do so.  Finally, the defendant appears to have resources, as he and his wife were living in a luxury apartment and own multiple vehicles, including a BMV SUV.

There are no conditions that could mitigate the defendant's potential danger to the community and risk of flight.  The fact that after numerous convictions and numerous custodial sentences, the defendant continues to commit crimes and victimize innocent people shows that he is not amenable to supervision.  Many of his prior convictions occurred while he was on court supervision, as he was in August and September 2019 when he sold an ounce of fentanyl to an undercover officer.  And given that the defendant has shown an ability to steal or manufacture credit cards, checks, and identifications in other people's names, there is a significant likelihood that, facing serious federal charges, he would attempt to do the same and flee.

In the government's view, no combination of conditions can sufficiently mitigate the risk of danger to the community or risk of flight posed by the defendant's release.  For instance, releasing the defendant to an unsecured facility such as a halfway house would not prevent him from absconding and engaging in continued drug distribution and firearm possession and/or proliferation.  Finally, with respect to the COVID-19 pandemic, while the government does not minimize the danger presented by the pandemic in custodial settings, the defendant is a 43-year old man, which is well under the CDC's

age threshold for someone who is "high risk," and the government is not aware that he suffers from any health conditions that would put him at high risk of severe injury or death if he were to contract COVID-19. Accordingly, the government believes that the Court should detain the defendant pending trial.

## IV.  CONCLUSION

For the reasons stated above, the government respectfully submits that it has met its burden of showing by clear and convincing evidence that the defendant poses a danger to any person or to the community and also poses a risk of flight that cannot be sufficiently mitigated by conditions of release. Accordingly, the government requests that the Court detain the defendant pending trial in this case.

DATED: August 19, 2020                                Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

  */s/ Ross Weingarten*
ROSS WEINGARTEN
Assistant United States Attorney